# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY BRUNSVIK, | 1:11-CV-00014 AWI GSA |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION TO QUASH SUBPOENAS IN PART |
| v. | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY et al., | |
| Defendants. | (Document 49) |

**I.     Introduction**

On October 21, 2011, Gary Bunsvik, ("Plaintiff") filed a Motion to Quash Subpoenas issued by Defendant Hartford Life Accident and Insurance Company ("Defendant" or "Hartford Life") on October 6, 2011. (Docs. 49-53). Defendant filed an Opposition to Plaintiff's motion on November 4, 2011. (Doc. 54).   Plaintiff filed a Reply on November 10, 2011.  (Doc. 56).  The matter was taken under submission pursuant to Local Rule 230 (g) and the hearing scheduled for November 18, 2011, was vacated.  Upon a review of all of the pleadings, Plaintiff's Motion to Quash is GRANTED IN PART.

**II.     Relevant Background**

Plaintiff filed this action on November 12, 2010, in the Fresno Superior County Court. The case involves a dispute over the denial of Hartford Life's death insurance benefits after the

1

death of Plaintiff's brother, Ben Brunsvik ("the decedent").  Plaintiff is the beneficiary listed on the insurance policy.  Defendant removed the action to this Court on January 4, 2011.  (Doc. 1).

The complaint alleges that on January 19, 2006, the decedent left his home to drive to Sacramento, California. (Doc. 1-1 at pg. 15).   He stopped briefly at his office and said goodbye to the landlord before 8:00 am.  The decedent was never seen or heard from again after leaving his office on January 19, 2006.  (*Id.*)

Almost four years later, on October 23, 2009, Ben Brunsvik's truck and severely decomposed remains were found submerged in nearly seventeen feet of water in a canal approximately five miles from his office. *(Id.* at pg. 16).  On March 23, 2010, the Defendant sent Plaintiff a letter indicating that the evidence did not establish that Ben Brunswick's death was covered by the policy.[1]  Plaintiff alleges that Defendant's denial of the policy is improper and that Defendant has deliberately and intentionally failed to conduct a proper, unbiased, and complete investigation regarding the Plaintiff's claim.  *(Id*. at 18).  Based on the above, Plaintiff's complaint alleges: 1)  breach of contract, and 2) breach of covenant of good faith and fair dealing as causes of action. He also alleges that he has suffered mental and emotional distress as a result of the denial. (*Id*. at pg. 17-18).  He seeks general, special, economic and consequential damages,  pre-judgment interest, attorneys' fees, costs, and punitive damages. (*Id*. at pg. 42-43).

As part of the discovery process, Hartford Life requested that Plaintiff produce documents related to his personal finances.  Plaintiff objected to those requests.  After unsuccessful attempts at resolving the discovery dispute, Defendant issued subpoenas directed toward MBNA America Bank, N.A, Bank of the West, and Educational Employees Credit Union requesting that the financial institutions produce documents related to Plaintiff's accounts and credit card information from 2005 and 2006. (Doc. 53, pgs. 46-63).

///

///

///

---

[1] This information is not contained in Plaintiff's complaint but was supplied by Defendant in its opposition to the motion to quash. (Doc. 54 at pg. 3).

**III.     Discussion**

Plaintiff argues that the subpoenas should be quashed as the information sought by Defendant is not relevant to this action and the requests invade his privacy rights. Specifically, Plaintiff contends that although he is seeking emotional distress damages, he is not seeking additional harm beyond benefits owed to him under the policy, attorneys' fees and costs. *See*, *Declaration of Stephanie Grewal,* dated October 21, 2011. (Doc. 51 at pg. 2, para. 7); (Doc. 50 at pg. 5). Therefore, Defendant does not need this information.

Defendant opposes the Motion to Quash on the basis that Plaintiff's alleged emotional distress damages require a showing of financial harm which render the financial documents relevant. Moreover, Plaintiff has put his financial status at issue and the trier of fact should not evaluate his damages in a vacuum without additional information related to his finances. Finally, any privacy issues were waived when Plaintiff claimed emotional distress damages. (Doc. 54 at pgs. 5-10).

    *a.     Relevancy*

Both parties agree that in an insurance bad faith case, damages for emotional distress are recoverable only when the insured has suffered some financial loss. *Gourley v. State Farm Mutual Auto Ins. Co.*, 53 Cal.3d 121, 127-128 (1991); *Waters v. United Services Automobile Association*, 41 Cal. App. 4th 1063,1081 (1996) (Some financial loss must be shown in a bad faith claim to establish emotional distress damages). It is also true that the threshold requirement of economic recovery of emotional distress damages may be satisfied where the insureds incurred a financial obligation to pay legal fees and court costs to enforce claims under the policy. *Delos v. Farmers group Inc*., 93 Cal. App. 3d 642, 659 (1979); *Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985) ("When an insurer's tortuous conduct compels the insured to retain an attorney to obtain benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss - damages- proximately caused by the tort.").

Here, Defendant argues that the subpoenaed information is relevant because emotional distress damages require a showing that the distress was caused by the non payment of benefits.

3

Thus, the emotional effect of non payment of benefits vastly differs depending on the net worth of the individual. In contrast, Plaintiff alleges that because the emotional distress is not based on the financial loss of the non payment of the policy but only the fact that he had to incur attorney fees, his financial condition is not relevant. Plaintiff cites *Major v. Western Ins. Co.,* for the proposition that when evaluating the reasonableness of emotional distress damages awards the Court does not look to the financial status of the insureds but rather only examines the amount of emotional distress damages based on attorney fees and costs relative to the amount of benefits owed under the policy. *Major v. Western Home Ins. Co.*, 169 Cal App. 4th at 1214-1215. Therefore, Plaintiff argues the financial status is not relevant to the analysis.

Plaintiff's reasoning is misplaced for two reasons. First, this approach ignores the fact that there is no definitive law on point. While *Major v. Western Home Ins. Co.* is a Fourth District California Court of Appeals case, it is persuasive authority and is not binding in this jurisdiction. Moreover, the ruling in that case dealt only with evaluating the reasonableness of the emotional distress damages awarded by the jury. It did not specifically address the factors the jury examined when awarding the damages amount, nor does it squarely address the issue presented here. Lastly, at least one court has examined the spending patterns of insureds when assessing emotional distress. *See e.g. Blake v. Aetna Life Ins., Co.*, 99 Cal App. 3d 901, 925 (1979) (Court considered the fact that Plaintiff spent money on antiques and gave money to a friend which undercut her claims of emotional distress based on non payment of the policy).[2] Therefore, it is possible that the trial judge may find that information related to Plaintiff's financial status is admissible for purposes of assessing the amount of emotional distress he experienced from having to incur attorneys' fees and costs of the litigation.

Second, the scope of discovery is very broad. Fed.R.Civ.P. 26(b) states in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to the claim or defense ... including the existence, description, nature, custody, condition, and location of any documents, or other tangible things and the identity and location of documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears

---

[2] The Court is not persuaded by Plaintiff's attempt to distinguish this case.

reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Thus, it is not required that relevant information *be* admissible, only that the discovery appears *reasonably calculated* to lead to the discovery of admissible evidence. Given the ambiguity in the law, the trial judge may determine that it is appropriate that the trier of fact consider the totality of Plaintiff's financial condition in order to assess the extent of his emotional distress.  Accordingly, obtaining this information should not be barred at this point in the discovery process.

      *b.*     *Privilege*

Federal Rule of Civil Procedure 45(c)(3)(A)(iii) provides that a Court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception of the waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).  In a federal action based on diversity of citizenship, state law governs privilege claims.  Fed. R. Evid. 501; *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998).  Article 1, Section 1 of the California Constitution recognizes an individual's right to privacy.  However, the right is not absolute but may be subject to invasion depending on the circumstances.  *Hill v. National Collegiate Athletic Ass'n* 7 Cal 4th 1, 37, 26 Cal Rptr. 2d 834, 857 (1994).  To evaluate privacy objections under either federal or state law, the Court must balance the party's need for the information against the individual's privacy rights. *Thierno v. Rite Aid Corp.*, 2008 WL 3287035 (N.D. Cal. 2008) citing *Ragge v. MCA/Universal*, 165 F.R.D. 601, 604 (C.D. Cal. 1995). *See also, Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal., 1999) (California right to privacy is subject to a balancing of the needs of the litigation with the sensitivity of the information/records sought).  Accordingly, the right is not absolute and may be subject to invasion depending on the circumstances. *Oakes v. Halvorsen Marine Ltd.*, 279 F.R.D. 281, 284 (C.D. Cal., 1998).

The Court recognizes that Plaintiff's financial records are subject to privacy considerations.  However, Plaintiff has also made a decision to litigate the instant case and to seek emotional distress damages.  Thus, his privacy rights must be balanced with Defendant's need to obtain information so it may effectively litigate this case.  Given that Plaintiff's privacy concerns can be addressed with a protective order, it appears that Defendant is entitled to the

5

information. However, the Court finds that Defendant's request for Plaintiff's bank and credit card information beginning 2005 and 2006 is excessive. Defendant did not deny the claim until March 2010, therefore, only Plaintiff's financial records beginning from that date to the present are relevant.

### IV.     Conclusion

Based on the above, Plaintiff's Motion to Quash is GRANTED IN PART. Specifically, Defendant's subpoenas shall be modified by limiting the requested information in time beginning from March 2010 until the present. The parties shall enter into a stipulated protective order that addresses Plaintiff's privacy concerns and file it with the Court within five days of the date of this order.

Alternatively, Plaintiff is advised that the financial records would not be relevant if he dismisses his claim for emotional distress damages. If Plaintiff pursues this option, he shall file the appropriate notice with the Court within five days of this order and the issue will be moot.

IT IS SO ORDERED.

Dated:   **November 18, 2011**                        **/s/ Gary S. Austin**
                                                               UNITED STATES MAGISTRATE JUDGE